

FILED

APR 0 3 2017

Clerk, U S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| IN RE<br><br>MARC ANDREAS LIECHTI,<br><br>Debtor.<br><br>MOLLY SCHWARZ,<br><br>Plaintiff and Appellee,<br><br>vs.<br><br>MARC ANDREAS LIECHTI,<br><br>Defendant and Appellant. | District Court Case No.:<br>CV 16–10–M–DLC<br><br>Bankruptcy Case No.:<br>14–61228–7<br><br>Adversary Proceeding No.:<br>15–04<br><br>ORDER |

Appellant Marc Andreas Liechti ("Liechti") appeals from the judgment entered against him by the United States Bankruptcy Court for the District of Montana in favor of Molly Schwarz ("Schwarz"), a creditor in the underlying bankruptcy case. The Honorable Ralph B. Kirscher, Chief Judge for the United States Bankruptcy Court, District of Montana, presided over this proceeding.[1] This Court has jurisdiction over this appeal under 28 U.S.C. § 158(a)(1). For the reasons stated below, Judge Kirscher's ruling if affirmed.

---

[1] At the time of the disposition, Judge Kirscher was still on the bench. He recently retired and is succeeded by the Honorable Benjamin P. Hursh, Chief Judge for the United States Bankruptcy Court for the District of Montana.

## Factual Background

Liechti filed a Chapter 7 bankruptcy petition on October 28, 2014, and then filed Schedules and his Statement of Financial Affairs ("SOFA") on November 11, 2014. (Doc. 8-5 at 2.) As part of the filing, Liechti executed a Declaration that his information was "true and correct to the best of [his] knowledge, information, and belief." (*Id.* at 3.) On his first Schedule B, Liechti identified his income as $7,000 per month as a salary drawn from Apec, Inc. ("Apec"), with a net monthly income of $5,799.50 and monthly expenses in the total amount of $3,510.85 (*Id.* at 9.) He also listed two checking and savings accounts: First Interstate Bank account # 2348 and Whitefish Credit Union account # 4998. Liechti amended Schedules B and C on November 21, 2014, amended Schedule J on November 25, 2014, and further amended Schedules B and C on May 5, 2015. (*Id.* at 8.)

On Liechti's personal income tax return, he listed the following payments made to him as the sole proprietor of a business known as "Apec Engineering Water and Sewer" ("AEWS"): $1950 per month on a contract with Glacier Ranch, $275 on a contract with Somers Bay, and $80 as a board member of Lakeside Water and Sewer District. When Liechti amended his Schedules B, C, and J during his Chapter 7 bankruptcy, he continued to omit income from AEWS and omitted his third checking account at First Interstate Bank: account number 7772,

named "Apec Engineering Water and Sewer Operation Acct". Liechti's only debit card was for the AEWS account. When he amended Schedule B on May 12, 2015— after his 11 U.S.C. § 341(a) meeting of creditors—he still did not add any income received from AEWS. He also never listed his interest in his sole proprietorship AEWS in his petition, Schedules, or SOFA.

At trial, the bankruptcy Trustee, Christy Brandon, testified that she reviewed all of Liechti's Schedules and looked into his finances before the § 341 meeting. (Doc. 8-4 at 16.) The Trustee indicated that she found income from AEWS on Liechti's bank statements, but that those amounts were not identified on his Schedule B. She also said that Schwarz contacted her prior to the § 341 meeting and informed her about the income omitted by Liechti. (*Id.* at 17, pg. 67.) The Trustee further explained that Liechti disclosed in the § 341 meeting that he had another bank account with income from AEWS and that he agreed to provide her with more bank statements. The Trustee testified that the AEWS income was important in order for her to understand the full extent of Liechti's financial condition. (*Id.* at 17, pg. 66.) During cross examination at trial, the Trustee further noted that during the two separate § 341 meetings Liechti did not withhold anything and agreed to comply with providing more documentation. (*Id.* at 18, pg. 69.)

The Trustee also testified that as a trustee it is important for her to do a cost-benefit analysis to determine whether to pursue a nondischarability action against a debtor. On this subject, her testimony was as follows:

> **MR. DYE:** . . . Now, I understand from another case and also our conversation that, that the manual for Chapter 7 trustees does have a requirement to perform -- that you're supposed to do a cost-benefit analysis before bringing an objection to discharge. Could you explain that to the Court and for the record?
>
> **MS. BRANDON:** Yes, that's right. In order to determine whether to pursue a nondischargeability action against a debtor, I am to do a cost-benefit analysis. I'm supposed to look at the expense and whether or not the estate has the ability to advance the expense, the likelihood of success of the prosecution, and what benefit it would secure for the creditors.
>
> **MR. DYE:** Okay. In any event, you did not -- you have not brought an objection to Mr. Liechti's discharge, have you, as you have testified?
>
> **MS. BRANDON:** Correct.

(*Id.* at 18, pg. 71.) Therefore, after applying the cost-benefit analysis, the Trustee determined that it was not beneficial to pursue an objection to Mr. Liechti's discharge of his debt to Schwarz.

Liechti's relationship with Schwarz dates back to around 2006. Liechti was working for Schwarz Engineering and purchased Schwarz's shares in the company. (Doc. 8-5 at 5.) Liechti gave Schwarz a promissory note and then changed the company name to Apec, Inc. Schwarz subsequently sued Liechti when he stopped making payments on the note. On May 27, 2011, Schwarz

obtained a judgment against Liechti in the amount of $170,070.38 plus interest at 6.5% per annum. Schwarz then served Apec with a writ of execution on March 7, 2014, to garnish Liechti's wages from Apec. Liechti's wife, who worked as Apec's accountant, responded to the writ and calculated the garnished amount of $1,449.98 based on Liechti's total earnings of $7,000 per month. However, Apec did not garnish any of Liechti's wages for the four months following service of the writ. Then, a new writ of execution was served on Apec on July 2, 2014. Liechti's wife responded again, but explained that Liechti was not being paid a wage by Apec so she could not garnish any wages pursuant to the writ.

Ultimately, when Liechti filed for bankruptcy, he still owed a considerable amount on the promissory note. Schwarz filed Proof of Claim No. 5 on February 5, 2015, asserting an unsecured nonpriority claim in the amount of $231,810.87, based on the underlying judgment against Liechti. In the adversary bankruptcy proceeding, Schwarz pursued two claims for relief: (1) denial of Liechti's discharge of her claim for knowingly and fraudulently making false oaths and account under 11 U.S.C. § 727(a)(4)(A); and (2) exception from Liechti's discharge of her claim under 11 U.S.C. § 523(a)(4). On December 16, 2015, Judge Kirscher denied Schwarz's second claim for relief under § 523(a)(4), but granted her first claim for relief under § 727(a)(4)(A). Thus, Liechti's discharge

as to Schwarz's Proof of Claim No. 5 for $231,810.87 was denied.

Liechti timely appealed to this Court on January 19, 2016.

## LEGAL STANDARD

When considering an appeal from a bankruptcy court, a district court applies the same standard of a review a circuit court would use in reviewing a decision of a district court. *In re Baroff*, 105 F.3d 439, 441 (9th Cir. 1997). A district court reviews a bankruptcy court's legal conclusions de novo and factual findings for clear error. *In re Leavitt*, 171 F.3d 1219, 1222 (9th Cir. 1999) (citations omitted). "The issue of dischargeability of a debt is a mixed question of fact and law that is reviewed de novo." *Miller v. United States*, 363 F.3d 999, 1004 (9th Cir. 2004).

Under 11 U.S.C. § 727(a)(4)(A), a court may deny a discharge of the debtor if the debtor knowingly and fraudulently made a false oath or account. When a creditor objects to a discharge, keeping in mind the "fresh start" purposes behind the Bankruptcy Code, a court should construe § 727 liberally in favor of the debtor unless the debtor is not honest. *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007). To prevail on a § 727 claim, a creditor must show that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *In re Roberts*, 331 B.R. 876, 882 (B.A.P. 9th Cir. 2005), *aff'd and*

*remanded*, 241 F. App'x 420 (9th Cir. 2007).

## DISCUSSION

Liechti raises three issues on appeal and argues Judge Kirscher erred by: (1) finding that substantial evidence established that Liechti acted with fraudulent intent and the omissions in the schedules were material to the administration of the estate; (2) arbitrarily disregarding the uncontradicted and unimpeached testimony of the Trustee that the omissions at issue were not material to estate administration; and (3) finding that Liechti acted with the fraudulent intent in light of the uncontradicted and unimpeached testimony from the Trustee that Liechti was completely open and cooperative in his dealings with the Trustee.

Therefore, under § 727, the only elements in dispute on appeal are two and four: whether the false oath was related to a material fact, and whether the false oath was made fraudulently.

## I.     Fraudulent Intent and Materiality

Due to the order of Liechti's arguments on appeal, this Court will review the issue of fraudulent intent first and then will review the materiality issue. First, in order to show that the false oaths were made fraudulently, the burden is on the plaintiff to show actual rather than constructive intent on the part of the debtor. *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010). To demonstrate fraudulent intent,

the plaintiff bears the burden of showing that: "(1) [the debtor] made the representations (e.g., a false statement or omission in bankruptcy schedules); (2) ... at the time he knew they were false; [and] (3) . . . he made them with the intention and purpose of deceiving the creditors." *Id.* at 1198. Here, it is clear that Liechti made the omissions and knew his schedules were false. Thus, what is in dispute is his intent and whether he made these omissions with the intention and purpose of deceiving the creditors. The Ninth Circuit explained that:

> Intent is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct. *Devers v. Bank of Sheridan, Mont. (In re Devers)*, 759 F.2d 751, 753-54 (9th Cir.1985); see also *In re Roberts*, 331 B.R. at 884. Reckless indifference or disregard for the truth may be circumstantial evidence of intent, but is not sufficient, alone, to constitute fraudulent intent. *In re Khalil*, 379 B.R. 163, 173-175 (B.A.P. 9th Cir. 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009).
>
> "Generally, a debtor who acts in reliance on the advice of his attorney lacks the intent required to deny him a discharge of his debts." *In re Adeeb*, 787 F.2d at 1343. "However, the debtor's reliance must be in good faith." *Id.* The advice of counsel is not a defense when the erroneous information should have been evident to the debtor. *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 111 (1st Cir.1987). "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *Id.*

*Id.* at 1199.

Liechti argues that he did not act with fraudulent intent when he omitted income from his Schedules and that those omissions were not material to the administration of the bankruptcy estate. First, he contends that he did not list

-8-

income from AEWS in 2013 because he lost money for that year. (Doc. 11 at 7.) He also states that he did not list any income from AEWS in 2014 because his taxes had not yet been completed when he filed for bankruptcy. (*Id.*) Second, he claims that the Trustee's testimony establishes that the omissions were not made with fraudulent intent because he "volunteered" the information about his AWES income. (Doc. 11 at 7.)

Liechti cites to the following testimony of the Trustee when she found out about the existence of Liechti's AWES bank account:

> **MR. DYE**: Did he disclose it to you in the 341 meeting?
>
> **MS. BRANDON:** I'm sorry, I misheard you, then. He did disclose it; yes, he did. And he agreed to send me bank statements, and he did that.
>
> **MR. DYE:** Okay. And did he disclose it in response to your question or did he volunteer it, a disclosure?
>
> **MS. BRANDON:** I asked him questions, and he disclosed it. I asked for production, and he agreed to do it and did it.

(Doc. 8-4 at 16, pg. 64-65.) Thus, Liechti argues that this testimony shows that he did not fraudulently continue to conceal his AEWS income from the Trustee.

However, while he complied with supplying the documentation to the Trustee, he never amended his Schedules to account for this income nor did he list his additional bank account on his SOFA. Moreover, on Exhibit NNN his spouse wrote that Liechti was not drawing a paycheck from the previous quarter when in

actuality he did have income from AEWS. Furthermore, he omitted his income from his AEWS account on Exhibit FFF before the § 341 meeting. This Court agrees with Judge Kirscher that "[l]ittle doubt exists that if the Trustee had not asked Liechti about AEWS, its income and account no. 7772 at the creditors' meeting, he never would have admitted to their existence." (Doc. 8-5 at 31.) Liechti's numerous declarations under penalty of perjury in his Schedules never accounted for the significant amount of money he had in his AEWS account. He cannot now disclaim all responsibility for his omissions which he made under oath—especially when he amended his Schedules twice and continued to omit income from AEWS—simply because the Trustee eventually discovered his AEWS account and he agreed to volunteer the AEWS account information. Notably, even after the Trustee discovered the discrepancy and asked for the AEWS income and account information, Liechti still never amended his Schedules and SOFA to include it. There is more than enough circumstantial evidence here to show that Liechti disregarded the truth and acted with fraudulent intent when he omitted his AEWS income from his Schedules, SOFA, and amended Schedules.

Similarly, the false oaths made by Liechti did relate to a material fact. "A fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and

disposition of the debtor's property.'" *In re Khalil*, 379 B.R. at 173. Liechti argues that the Trustee's testimony at trial proves that the income omitted in his Schedules and SOFA did not amount to a material fact. This Court disagrees.

The omitted information is material because it bears upon the administration of the bankruptcy estate, Liechti's financial affairs, and Liechti's property. Notably, the approximate $2,305.00 received per month in his AEWS account is significant and is certainly large enough for it to be known to a debtor and should be disclosed during a bankruptcy proceeding. Regardless of whether the Trustee eventually discovered the AEWS income and Liechti volunteered the information, the important issue is timing. Liechti chose not to include the AEWS income and account on his first Schedules and SOFA, and then continued to omit the information on his amended Schedules. The amount of money that was omitted is material because it bears a relationship on the total amount of the debtor's estate and also shows the total amount of assets he owned and the nature of his business dealings. Therefore, even though the Trustee testified that Liechti gave her the requested AEWS documents upon request and even though the Trustee did not pursue an objection to the discharge based on her cost-benefit analysis, there is no doubt that the information omitted by Liechti goes to a material fact of the overall bankruptcy estate.

Consequently, both Liechti's arguments regarding fraudulent intent and materiality are without merit.

**II.     Testimony of Trustee**

Due to the Court's analysis above, the Court will not further address whether the trial court arbitrarily disregarding the uncontradicted and unimpeached testimony of the Trustee because it has been fully analyzed above. The Court finds that the testimony of the Trustee regarding the omissions at issue do not overcome the fact that the omissions were material to the estate administration.

**III.    Fraudulent Intent in Light of Testimony of Trustee**

Again, pursuant to the analysis above, the Court finds that Liechti did act with fraudulent intent, even in light of the testimony of the Trustee.

CONCLUSION

Upon a de novo review of the Bankruptcy Court's legal conclusions, the Court determines the Bankruptcy Court's order awarding judgment against Appellant Liechti in favor of Appellee Schwarz was based on legal grounds within the contemplation of the Bankruptcy Code and on factual findings that are not clearly erroneous.

IT IS ORDERED that the Bankruptcy Court's order awarding judgment in

favor of Molly Schwarz, and against Marc Andreas Liechti is AFFIRMED.

IT IS FURTHER ORDERED that the Bankruptcy Court's judgment is AFFIRMED in all other respects.

DATED this 3rd day of April, 2017.

/s/ Dana L. Christensen
Dana L. Christensen, Chief Judge
United States District Court